# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

CARLOS GARCIA,          )
                        )
      Plaintiff,       )
                        )
      v.             )       CAUSE NO.: 1:14-CV-399-TLS
                        )
CAROLYN COLVIN,       )
Acting Commissioner of the Social   )
Security Administration,      )
                        )
      Defendant.     )

## OPINION AND ORDER

The Plaintiff, Carlos Garcia, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). On December 21, 2011, the Plaintiff protectively filed applications for SSI and DIB, alleging disability beginning on December 13, 2011. An ALJ held a hearing on February 26, 2013, at which the Plaintiff, who was represented by an attorney, and a vocational expert both testified. On August 15, 2013, the ALJ found that the Plaintiff has the severe impairment of right knee osteoarthritis, but ultimately concluded that the Plaintiff is not disabled. The Plaintiff requested review of the ALJ decision, and on October 20, 2014, the Appeals Council denied the Plaintiff's request for review. On December 22, 2014, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

**BACKGROUND**

**A.      The Plaintiff's Testimony**

The Plaintiff is 56 years old and lives alone. He has a high school diploma, and his past relevant work is as a laboratory sample carrier and warehouse worker.

At the time of the ALJ hearing on February 26, 2013, the Plaintiff was employed part-time as a cleaner for Reliable Cleaning Service.[1] He testified to working two hours per day and ten hours per week, cleaning a designated area of an office building. Due to pain in his knee—for which he had surgery in August 2011 and wears a brace—the Plaintiff said he cannot work more than a two-hour shift without sitting down.[2] The Plaintiff also said he cannot stand more than 15 to 20 minutes at one time or lift more than "about 15 pounds" (Tr. 45), and that he uses a cane to assist with walking and to prevent falls.

The Plaintiff also described his experience with "anxiety attacks," which he said were typically generated by nervousness or the feeling of being "closed in." (Tr. 45.) The Plaintiff said his anxiety attacks occur as often as "once a day" or "twice a week," depending on the circumstances. (R. 47.) According to the Plaintiff, his anxiety prevents him from driving. (See Tr. 50 ("[I don't drive b]ecause I'm afraid that I . . . might get one of those anxiety attacks and I might hit something or crash.").)

_____

[1] Prior to his employment with Reliable Cleaning Service, he worked four hours per day as a cleaner for Tri State Maintenance. The Plaintiff said he was terminated for failing to supervise another employee.

[2] The Court notes that, at one point, the Plaintiff said he was capable of working four hours per day. See Tr. 44 ("[ALJ:] What happened that you say now that you are not able to work more than two hours? [Plaintiff:] Because that's the only area that [Reliable Cleaning Service, Inc.] gave me right now . . . and it takes only two hours. [ALJ:] If they gave you a four-hour area, could you do it? [Plaintiff:] I think, yeah.").

**B.      The Vocational Expert's Testimony**

At the hearing, the vocational expert (VE) testified that an individual of the Plaintiff's age, education, and work experience who (1) can occasionally lift and carry up to 20 pounds, and frequently lift up to 10 pounds; (2) can stand and/or walk up to 6 hours; (3) can sit for up to 6 hours; (4) cannot climb ladders, ropes, or scaffolds; and (5) can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, could perform the Plaintiff's past relevant work as a laboratory sample carrier. The VE opined that such an individual, even with the additional requirement of needing the ability to sit or stand at will, could perform light work as a repack-room worker, storage facility rental clerk, and laundry worker. However, needing a cane for standing would eliminate the repack-room worker and laundry worker positions.

**C.      ALJ Decision (Five-Step Evaluation)**

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. See 20 C.F.R. § 404.1520(a)(4)(I)–(v); 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); §423(d)(2)(A) (An applicant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.") The first step is to determine whether the claimant is presently engaged in

substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff has the severe impairment of right knee osteoarthritis.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Because the Plaintiff's impairment was found not to meet or equal a listed impairment, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96-8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c). The ALJ concluded that the Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). Specifically, the ALJ found that the Plaintiff is able to push or pull without limitations; occasionally lift and carry up to 20 pounds, and frequently lift up to 10 pounds; stand and/or walk up to 6 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. However, the ALJ added that the Plaintiff cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs, balance, stoop, kneel,

crouch, or crawl.

At the final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, and make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence"

before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal, the Plaintiff contends that, in determining his RFC, the ALJ erred by (1) improperly discrediting his testimony about his functional limitations; (2) failing to provide sufficient reasons for discrediting the opinion of Dr. Babatunde Onamusi (internal medicine); and (3) failing to assess the Plaintiff's non-severe impairments of anxiety and depression.

### A.     Credibility Determination

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *see also Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not

explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila*, 573 F.3d at 517 (citing 20 C.F.R. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738).

Here, the ALJ determined that the Plaintiff statements about the "intensity, persistence, and limiting effects" of his knee pain were "not entirely credible." (R. 26.) The ALJ relied on a combination of objective medical evidence, inconsistent testimony, and daily activities. Because the ALJ's discussion of the objective medical evidence, and whether it aligns with the Plaintiff's allegations, includes the ALJ's decision to afford no weight to Dr. Onamuni's March 19, 2013, consultative physical exam opinion, the Court will discuss that decision here as well.

### 1.    *Objective Medical Evidence*

According to the ALJ, the treatment records did not support the Plaintiff's alleged functional limitations. In particular, the ALJ noted that "outside of a report on August 10, 2012, of knee pain … treatment notes fail to reflect complaints of knee pain after December 12, 2011." (R. 27.) With regard to his history of knee pain, the Plaintiff complained about such pain in June 2011 after he had been "playing 'a lot' of baseball." (R. 27.) Thereafter, an MRI confirmed that the Plaintiff had a meniscal tear and a cyst. Right knee orthroscopy was performed in late

August. At the four-week follow-up in September, the Plaintiff's knee had full active range of motion. Although there was some tenderness, there was no instability. The pain levels the Plaintiff reported with activity were considered typical for the time frame, and improvement was expected with strengthening and time. One additional post-operation visit occurred in November, during which the Plaintiff reported some knee pain and aches depending on the weather and activity. Dr. Harris believed there was some underlying irritation and early arthritis, administered an injection, and advised the Plaintiff to take over-the-counter pain medication. The Plaintiff had also reported some pain during an appointment with his primary care physician, Dr. M. Hess, in September 2011, but did not mention such pain during a follow-up in October. Likewise, during an emergency room visit for chest pain in September, the Plaintiff denied musculosekeletal injury or pain, and had normal range of motion. Likewise, emergency room visits in October, November, and December, all for chest pain, revealed no joint pain or swelling or other musculoskeletal issues.

In December 2011, the Plaintiff returned to see Dr. Hess. The purpose of his visit was to obtain work restrictions. The Plaintiff worked in a warehouse and had to climb ladders and run a forklift. He expressed concern with these duties due to panic attacks and his previous knee surgery. Examination showed tenderness to palpatation in the right knee and mild swelling. Dr. Hess issued a 25-pound lifting restriction, per the Plaintiff's request, and prescribed Mobic for osteoarthritis of the knee. Thereafter, the Plaintiff made no complaints of knee pain to Dr. Hess during a March 13, 2012, appointment, but was diagnosed with osteoarthritis of the knee on August 10, 2012. The ALJ noted that the final instance of treatment was a January 5, 2013, emergency room visit to complaint of a headache over the prior two to three weeks that began

after a family member's death. The ALJ wrote:

> The claimant denied vomiting, visual changes, confusion, and gait instability, and examination showed no evidence of distress. Extremities were non-tender, no edema was present, and neurological examination was normal. . . . Cervical spine CT was normal outside of mild degenerative changes at C6-7, and head CT was negative. An acute headache was diagnosed, and because pain had a "component in his neck," Flexeril and naproxen were prescribed. There is no mention of use of a cane, and the claimant was ambulatory. He was also "neurologically intact," no complaints of knee or lower extremity pain were made, and no gait deficits were recorded. To the contrary, the claimant denied gait instability.

(R. 29.)

The Plaintiff does not challenge these statements about the medical record, and an ALJ is entitled to rely on discrepancies between the objective evidence and the Plaintiff's self-reported allegations of pain to find that the Plaintiff may have been exaggerating the symptoms. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (holding that discrepancy between the plaintiff's reports and medical reports supported ALJ's credibility determination). There was nothing patently wrong with the ALJ's comparison of the treatment records to the Plaintiff's asserted limitations to the SSA.

The Plaintiff's only explicit challenges to the credibility determination are limited to the ALJ's statements about the Plaintiff's daily activities, and to his finding that the Plaintiff offered inconsistent statements about his limitations. The Plaintiff also criticizes the ALJ's failure to credit his positive work history. The Court will get to those issues, but first discusses the medical opinions in the record.

**2.** *Medical Opinion Evidence*

A treating physician's opinion is entitled to controlling weight if it is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2). Generally, more weight is given to opinions from treating sources on grounds that

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely, (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion-to determine what weight to give the opinion. *Id.* The ALJ must give "good reasons" to support the weight he ultimately assigns to the treating physician's opinion. *Id.*

The Plaintiff contends that the ALJ failed to provide sufficient reasons for discrediting the opinion of Dr. Onamusi, who met with the Plaintiff on March 19, 2013, and conducted a consultative physical examination. (R. 29.) Instead of relying on Dr. Onamusi, the ALJ decided to give "great weight" to Dr. Hess's opinion about the Plaintiff's residual functional capacity. (R. 30.) In particular, the ALJ concluded that the "light work" restrictions Dr. Hess recommended in December 2011 were better supported by the evidence in the record. *Id.*

Generally, it is up to the ALJ to decide what doctor to believe, so long as the decision is supported by substantial evidence. *Brooks v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Hence, when "treating and consulting physicians present conflicting evidence, the ALJ may decide

whom to believe" as long as the decision is supported by substantial evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

In the ALJ's decision, she specifically emphasized the December 2011 exam, where the Plaintiff requested a work restriction for a 25 pound lifting-limit. (R. 28.) This was one of the few occasions, following his surgery, that the Plaintiff expressed knee issues to Dr. Hess. In fact, the ALJ noted that at a follow-up on March 13, 2012, the Plaintiff did not complain about his knee to Dr. Hess. (R. 28.) Outside of one minor complaint about knee pain in August 2012, the Plaintiff did not complain about his knee after his visit with Dr. Hess in December 2011. (R.30.) Also, as mentioned elsewhere, the record did not support the Plaintiff's other allegations of back pain, hand pain, or the need for a cane. Hence, the last reliable diagnosis of the Plaintiff's condition was by Dr. Hess. In other words, the opinion of Dr. Hess was supported by the objective medical evidence.

The ALJ also noted that Dr. Hess and the Plaintiff had a longstanding medical relationship that began on June 17, 2011, when the Plaintiff first reported knee pain, and continued after the Plaintiff's knee surgery on August 24, 2011. (R. 27.) In fact, Dr. Hess was the Plaintiff's primary care physician between 2011 and 2012, and continually treated him throughout that time. Thus, the ALJ's decision to defer to Dr. Hess was partially based on their treatment history. It is difficult to think of a "more appropriate factor than a physician's familiarity with the [Plaintiff's] medical history" when determining how much weight to afford to their opinion. *White v. Barnhart*, 415 F.3d 654, 658–59 (7th Cir. 2005).

The ALJ found the Plaintiff's presentation to Dr. Onamusi to be "markedly different" from his previous treatment with Dr. Hess and during emergency room visits. (R. 29.) The

Plaintiff reported to Dr. Onamusi's exam with a cane, and Dr. Onamusi observed the Plaintiff walking with a "fair amount" of limp. (*Id.*) During the exam, the Plaintiff reported knee pain, back pain, and numbness, tingling, pain, and stiffness in his hands and fingers. (*Id.*) The examination revealed "mild tenderness . . . in the lumbar spine" but also noted that "no spasm was present." *Id.* Dr. Onamusi observed that the Plaintiff's "range of motion was decreased in the lumbar spine, but it was otherwise full." *Id.* Further, the exam revealed that despite the presence of significant "gait and ambulatory defects, [the Plaintiff's] muscle power and tone remained normal." *Id.* In addition, the Plaintiff's "gripping, grasping, and fine and gross manipulation were preserved." *Id.*

As a result of the examination, Dr. Onamusi concluded that the Plaintiff was "limited to work at the sedentary level." (R. 29.) In doing so, Dr. Onamusi opined that the Plaintiff "could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl." (R. 30.) He also opined that the Plaintiff could "occasionally climb ramps and stairs, and occasionally balance." (*Id.*) Further, Dr. Onamusi noted that the Plaintiff "required the cane for support during ambulation and transfer" and that the Plaintiff "appeared in pain with ambulation and transfer." (R. 29.) Likewise, Dr. Onamusi noted that the Plaintiff was able to walk only a few feet without the cane. (R. 29–30.) In addition, Dr. Onamusi noted that the Plaintiff's use of the hands "for fine and gross skills was limited to occasional or frequent performance, and operation of foot controls was limited to occasional bilaterally." (R. 30.) Finally, Dr. Onamusi noted that the Plaintiff was "unable to shop or use public transportation." *Id.*

In her decision, the ALJ decided to give "no weight" to Dr. Onamusi's opinion because it was not "an accurate reflection of the [Plaintiff's] physical capacity throughout the period at

issue." (R. 30.) Dr. Onamusi performed a single consultative exam, making him a nontreating source. *See* §404.1502 (Nontreating source means a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you. The term includes . . . a consultative examiner.) An ALJ is not required to defer to the opinion of a nontreating source. Instead when determining the weight of a nontreating physician's opinion an ALJ should consider how well the physician's opinion is supported, whether it is consistent with the record, and any other factor of which the ALJ is aware. §404.1527. This is precisely what the ALJ did here.

The ALJ found that the record contained insufficient objective evidence to support Dr. Onamusi's "sedentary work" recommendation. (R. 30.) In particular, the ALJ noted that "the evidence fail[ed] to establish additional impairments or a decline in functioning" between Dr. Hess's December 2011 evaluation and Dr. Onamusi's March 2012 exam that would explain the decrease in the Plaintiff's physical condition and abilities. (R. 30.)

For example, the ALJ emphasized that "records in evidence fail to show any prior complaints or treatment for low back pain" and, in 2012, the Plaintiff himself admitted that his back had not bothered him since 2007. (R. 22.) While Dr. Onamusi's opinion noted "mild tenderness . . . in the lumbar spine" there is no lumbar imaging to support the conclusion that the Plaintiff has a severe lumbar spine impairment. (R. 22.) Without objective medical evidence, Dr. Onamusi's conclusions were based primarily on the Plaintiff's subjective complaints, which is a good reason to discount his opinion. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *Rudicel v. Astrue*, 282 F. App'x 448, 453 (7th Cir. 2008). Similar to the decision in *Ketelboeter*, where there was "scant objective medical evidence" that would corroborate the plaintiff's

claimed increase in pain, in this case the ALJ found the Plaintiff's claims of pain unpersuasive because they were not accompanied by evidence. In fact, Dr. Onamusi's exam is devoid of any medical documentation or diagnostic reports that would support his findings. Therefore, based on the record, Dr. Onamusi's opinion was almost exclusively based on the Plaintiff's subjective complaints.

Further, in her opinion, the ALJ concluded that there is no evidence in the record to support the Plaintiff's hand issues or need for a cane. (R. 22.) In fact, the ALJ noted that similar to the allegations of back pain, the Plaintiff's only complaint about hand pain occurred at Dr. Onamusi's exam. (R. 22.) Moreover, Dr. Onamusi's own evaluation concluded that there were no issues "with regard to gripping, grasping, or use of hands for fine or gross manipulation." (R. 23.) Also, while Dr. Onamusi opined that the Plaintiff needed the cane to walk, the ALJ noted that "no treating source has noted the use of a cane" (R. 30.) In addition, the ALJ observed that there were only two instances in which a cane was present, "[one] was at the hearing [and the second] during [Dr. Onamusi's] consultative physical exam." (R. 30.) Thus, the lack of corroborating evidence undermined the Plaintiff's allegations, and by extension discredited Dr. Onamusi's opinion. This Court will afford great deference to an ALJ as long as they minimally articulate their reasons for discounting a physician's opinion. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

3.      *Daily Activities*

As permitted by the governing regulations, the ALJ considered the Plaintiff's daily activities when deciding whether to credit his statements about his functional limitations,

specifically his statement that he needs a cane for walking and so that he will not fall. The ALJ noted that no evidence supported the Plaintiff's need for a cane, and that there were "only two instances in which a cane was present [one] was at the hearing and [the second] during [Dr. Onamoui's examination]." (R. 30.) He noted that both times, the use of a cane occurred during events that were conducted for purposes of determining the Plaintiff's capacity to work. No treating source had noted the use of a cane. Additionally, his previous employer advised that the Plaintiff would not have been able to complete his job in a timely manner had he been using a cane. Thus, the ALJ concluded that the Plaintiff's "ability to perform a cleaning job, within a set timeframe is inconsistent with allegations of the necessity for a cane." (R. 27.)

The Plaintiff argues that the ALJ should not have used his limited activities as evidence that he can perform full time work. This, however, is not what the ALJ did. The ALJ cited evidence, including his part-time cleaning job, as evidence that contradicted his need for a cane. The Plaintiff would have the Court reweigh the evidence to credit Dr. Onamusi's finding that a cane was medically necessary. The Court has already addressed why the ALJ's decision to accept the opinion of Dr. Hess, and discount the opinion of Dr. Onamusi, does not require remand.

**4.      *Inconsistent Statements***

The ALJ concluded that the Plaintiff's impairment is severe and his allegations of pain still allowed him to engage in light work, as defined by statute. In doing so, the ALJ noted that the Plaintiff's inconsistent testimony undermined his own allegations of increased pain. Specifically, the ALJ pointed to testimony by the Plaintiff in which he states that he could only

work a two-hour shift because of the pain, but immediately contradicts himself by testimony that he could work a four-hour shift if requested. (R. 26.) Also, the Plaintiff testified that he could only stand "10 to 15 minutes" but again contradicted himself by testimony that he stands the entire two hour shift with the exception of sometimes taking a five to ten minute break to sit down. Thus, the ALJ properly concluded that the Plaintiff's subjective allegations of increased pain did not justify finding that he could not perform light work with some additional postural limitations. Because the ALJ considered the "entire case record and give specific reasons for the weight given to the individual's statements" SSR 96-7p, the Court will not remand the credibility finding. A credibility determination does not need to be flawless. Instead, the Plaintiff must prove that it was "patently wrong." *Simalia*, 537 F.3d at 517. The Plaintiff has not made that showing.

**B.      Non-Severe Mental Impairments**

The Plaintiff argues that the ALJ failed to consider the Plaintiff's non-severe impairments, specifically anxiety and depression. As the ALJ noted during step 2, the "medical impairments of anxiety and depression, considered singly or in combination, do not cause more than a minimal limitation." (R. 23.) The ALJ considered the Plaintiff's daily living activities, social functioning, concentration, and decompensation and concluded that these impairments cause no more than a "mild" limitation. (R. 24.) In the first functional area of daily living, the ALJ concluded that the Plaintiff has "no more than mild limitation." (R. 23.) Rather, any limitations in this area were attributed to physical limitations, not mental. The only time the Plaintiff reported that he was unable to drive due to anxiety attacks was during the hearing. With

respect to social functioning, the ALJ found mild limitation. (*Id.*) With regard to concentration, persistence, and pace, the ALJ noted the results of the consultative psychological examination and of the Plaintiff's presentation during Dr. Onamusi's examination to support her conclusion that he had only a mild limitation. The ALJ also noted that the Plaintiff's daughter reported that he finished tasks, and that she did not endorse any significant deficits in his ability to respond to stress or change. Further, the Plaintiff's employer confirmed that he did not have frequent absences, did not require extra supervision, fewer or easier duties, frequent rest periods, or lower production expectations. (R. 24.) In fact, his work was considered satisfactory and fully worth the amount paid. The Plaintiff has experienced no episodes of decompensation of extended duration.

When determining a claimant's RFC, the ALJ must consider the combined effect of all impairments, "even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing 20 C.F.R. § 404.1523). An ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

Here, the ALJ indicated that the Plaintiff's anxiety and depression caused mild limitations, or no more than mild limitations, in his activities of daily living; social functioning; and concentration, persistence, or pace. At the end of his step-two analysis, the ALJ acknowledged that the B criteria do not constitute an RFC determination, and that the mental RFC assessment relevant to steps four and five required a more detailed itemization of various functions. The ALJ indicated that the RFC reflected the degree of limitation that he found in the paragraph B mental function analysis. When determining the Plaintiff's RFC, the ALJ again

noted the Plaintiff's "alleged impairment due to anxiety attacks" but stated that "the record as a whole does not establish more than mild limitations in any functional domain." (R. 26.) He acknowledged the Plaintiff's complaints to Dr. Hess in December 2011 of panic attacks that made him feel weak, but also noted that the Plaintiff confirmed that Xanax was helpful.

It is not clear what restrictions the Plaintiff thinks the ALJ should have included in the RFC to account for his non-severe mental impairments. He does not identify any limitations on his ability to work that were caused by his non-severe impairments. Controllable conditions do "not entitle one to benefits or boost one's entitlement by aggravating another medical condition." *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Substantial evidence supports the ALJ's conclusion that the Plaintiff's non-severe mental impairment did not prevent him from performing light work where he was never required to climb ladders, ropes, or scaffolds.

## C. Past Relevant Work

An ALJ must compare the plaintiff's residual functional capacity with the requirements of his relevant past work. §404.1520(a)(4)(iv). An applicant who can perform his "past relevant work" is not entitled to benefits. *Smith v. Barnhart*, 388 F.3d 251 at 252 (7th Cir. 2008). "Past relevant work" is work that has been done in the past 15 years, that was substantial gainful activity, and that lasted long enough to learn to perform the job. §404.1560(b)(1). In determining if a claimant is capable of returning to his past relevant work, an ALJ must "compare the demands of the claimant's past occupation with his or her present capacity." *Steward v. Bowen*, 858 F.2d 1295, 1299–300 (7th Cir. 1988). An ALJ cannot describe a claimant's job broadly, instead the ALJ must list the specific physical requirements of the previous job and "assess, in

light of the available evidence, the claimant's ability to perform these tasks." *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991). Further, if the ALJ determines that the plaintiff cannot perform the duties of his past relevant work, she then must establish that plaintiff has the ability to perform other work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). In making this determination the ALJ should consider whether the plaintiff can meet the functional demands as generally required by employers throughout the economy. *Smith*, 388 F.3d at 253.

The ALJ relied on extensive medical reports, and other evidence in the record to conclude that the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR §404.1567(b) and §416.967(b). Specifically, the ALJ relied on evidence from Dr. Hess, whose work restrictions in 2011 fully accommodate the limitations imposed by a light work classification. (R. 27.) In fact, during the Plaintiff's visit with Dr. Hess, he himself requested a 25-pound lift-limit, which comports with the light work restrictions. (R. 28.) Outside of Dr. Onamusi's report, which was properly found to be unreliable, no other medical source found that the Plaintiff required a "sedentary work" restriction. All that is required when posing a hypothetical is that the question be supported by the medical evidence. *Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993). Because there was a lack of corroborating evidence to support the Plaintiff's sudden decline in physical ability, the ALJ did not have to pose hypothetical questions considering Dr. Onamusi's restriction. *Cass*, 8 F.3d at 556 (noting that "because the record lacks medical evidence that the Plaintiff could not sit, stand or walk . . . a proper hypothetical question need not include these alleged impairments); *see also Simila*, 573 F.3d at 521 (noting that an ALJ did not have to consider the opinion of a nontreating source when posing hypothetical

questions, after nontreating source's opinion was discredited).

Nevertheless, the ALJ questioned the VE about the consequences the cane would have on the VE's recommendations. (R. 31.) The VE opined that the need for a cane while walking would not affect any of the jobs, but the need for a cane while standing would affect the repack room and laundry worker jobs. (R. 31.) Yet, as the ALJ noted, there is no evidence to support the Plaintiff's contention that he needs a cane for walking or standing. (R. 31.) Moreover, the VE testified that even with the Plaintiff's assertions that he needed to sit in 15 minute intervals, the jobs would still exist. (R. 31.) Therefore, because the ALJ relied on medical evidence when questioning the VE, and disregarded Dr. Onamusi's unsupported opinion, the ALJ's determination that the Plaintiff can perform his past work is supported by evidence.

The VE provided reliable answers to the ALJ's questions by relying on the Dictionary of Occupational Titles to support her conclusion that the Plaintiff's earlier occupation was defined as unskilled and performed at the light exertional level. (R. 31.) The VE testified that the Plaintiff's "residual functional capacity would not preclude him from performing his past relevant work as a laboratory sample carrier." (R. 31.) The VE also provided several occupations that the Plaintiff would qualify for, taking into account his age, education, past relevant work, and residual functional capacity. These jobs included, repack room worker, storage facility rental clerk, and laundry worker. (R. 31.) The VE's answers to the hypothetical questions provided substantial evidence that the ALJ reasonably relied on to support her conclusion that the Plaintiff is not disabled.

**CONCLUSION**

For the forgoing reasons, the ALJ's decision is AFFIRMED.

SO ORDERED on August 23, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT